UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

VONNELL ALANDO REED,

    Defendant.
_____/

Case No. 19-cr-20253

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**<u>OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [#25]</u>**

**I. INTRODUCTION**

On April 23, 2019, a grand jury indicted Defendant Vonnell Alando Reed with Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1). ECF No. 7. This charge stems from a traffic stop and arrest on April 4, 2019. ECF No. 13, PageID.32.

Presently before the Court is the Defendant's Motion to Suppress Evidence, filed on August 26, 2019. ECF No. 25. The Government filed a Response on October 11, 2019. ECF No. 37. Defendant did not file a Reply. A hearing on Defendant's Motion was held over a three-day period on February 3, 2020, March 3, 2020, and March 5, 2020. For the reasons that follow, the Court will DENY Defendant's Motion [#25].

1

## II. FACTUAL BACKGROUND

On April 4, 2019, Defendant Reed was driving a 2005 black Chevy Trailblazer without any visible license plate. ECF No. 25, PageID.87; ECF No. 37, PageID.122. At approximately 11:30 p.m., Sargent Lewis and Officers Reyes-Morales and Lockhart of the Detroit Police Department were on patrol and pulled over the Trailblazer at the intersection of West 7 Mile and Forrer Street. *Id.*

All three officers exited the patrol vehicle and approached the Trailblazer with their flashlights drawn. ECF No.37, PageID.124. Sargent Lewis walked to the left rear side of Defendant's vehicle, Officer Reyes-Morales approached the right rear side, and Officer Lockhart looked through the rear window. *Id.* at PageID.125. In his police report, Officer Lockhart stated that he "observed the offender throw a suspected handgun to the back right seat of the vehicle" as the officers approached the Trailblazer. ECF No. 37-2, PageID.134. Officer Reyes-Morales provided a similar observation in his police report, stating that he saw the Defendant "turn in his seat to his right side and reach towards the back seat and [he] visually observed what appeared to be a handgun in his hand." ECF No. 37-3, PageID.135. Officer Reyes-Morales also wrote that he "heard [the gun] hit the floorboard and rear right side passenger door of the vehicle." *Id.* Defendant argues that the officers made no verbal indication to each other about these observations at the time. ECF No. 25, PageID.81.

According to the dash camera footage included as Exhibit A in the Government's Response, the Defendant is removed from the vehicle about forty seconds after the officers exit the patrol car and then fails to produce a valid driver's license. *See* Gov.'s Ex. A at 00:01:06-00:01:46. At about the same time the Defendant was removed, Officer Reyes-Morales opened the right rear passenger side door. ECF No.25, PageID.81; ECF No.37, PageID.125. The Government states that once he opened the door, Officer Reyes-Morales "found a loaded Hi-Point C9 9mm pistol" on the rear passenger floorboard. ECF No. 37, PageID.121, 125. Defendant Reed, however, states that the officer conducted a search of the vehicle and recovered the firearm in "a pouch hanging over the front passenger's seat." ECF No. 25, PageID.81.

As Officer Reyes-Morales opened the right rear passenger door, Sargent Lewis and Officer Lockhart searched Defendant Reed both in front of the Trailblazer and on the hood of the patrol vehicle. *See* Gov.'s Ex. A at 00:02:07, 00:02:19. The officers also searched the Law Enforcement Information Network (LEIN), which indicated that the firearm recovered in the vehicle was stolen. ECF No. 37-3, PageID.135. According to Officer Lockhart's report, Defendant Reed stated that he did not have a driver's license or concealed pistol license (CPL). ECF No. 37-2, PageID.134.

The above facts were established through the credible testimony of the officers and the supporting vehicle and body camera video that was offered during the hearing. The Defendant testified against the advice of his counsel and his testimony added nothing to support the invalidity of the stop and search.

In the present motion, Defendant challenges the admissibility of the fruit of the alleged illegal arrest. ECF No. 25, PageID.88. He concedes that the officers had justification for the initial traffic stop, but argues that the officers' actions were not supported by either probable cause or reasonable suspicion to extend the stop. *Id*. Defendant therefore submits that the firearm and ammunition should be suppressed. *Id*.

The Government argues that Defendant allegedly turning around and placing a gun in the rear passenger area gave the officers reasonable suspicion to believe he was dangerous and necessitated a protective search of the vehicle. ECF No. 37, PageID.126-127. Alternatively, the Government purports that Defendant Reed's alleged actions, under the totality of the circumstances, established probable cause for them to search the vehicle. *Id*. The Government argues that the recovered firearm and ammunition should not be suppressed and thus Defendant's Motion should be denied. *Id*.

### III. LAW & ANALYSIS

**A. The Initial Traffic Stop**

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures …." U.S. CONST. amend. IV. This means that if a motorist is stopped by police officers, he has been "seized" under the Fourth Amendment. *United States v. Pacheco*, 841 F.3d 384, 389–90 (6th Cir. 2016) (citing *Brendlin v. California*, 551 U.S. 249, 256–59 (2007)). Accordingly, "a police officer may stop a vehicle only if the officer 'possess[es] either probable cause of a civil infraction or reasonable suspicion of criminal activity.'" *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016) (alteration in original) (quoting *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012)). Here, the Defendant has conceded that the officers had justification for the initial traffic stop, as the vehicle was being driven without any visible license plate. Under Michigan law, it is a civil infraction if a license plate is not attached to the rear of the vehicle. MICH. COMP. LAWS § 257.225. The officers therefore had probable cause of a civil infraction, providing sufficient justification to stop Reed's vehicle.

**B. Reasonable Suspicion**

The Government first argues that the officers had reasonable suspicion to conduct a protective search of the Defendant's vehicle once they allegedly saw him throw a firearm towards the backseat. Defendant Reed maintains that neither the

dash camera footage nor the officer body cameras indicate that they observed Defendant possessing or throwing a gun. Further, Defendant notes that the tint of the vehicle windows and Defendant's posture in the front seat may have obscured the officers from seeing any action that would rise to reasonable suspicion or probable cause.

Whether reasonable suspicion existed at the time of a search must be determined "under the totality of the circumstances, considering 'all of the information available to law enforcement officials at the time.'" *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Feathers v. Aey*, 319 F.3d 843, 849 (6th Cir. 2003)). Officers are entitled "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation omitted). "Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *United States v. Campbell*, 549 F.3d 364, 370–71 (6th Cir. 2008) (internal citations omitted); *United States v. Craig*, 306 Fed. Appx. 256, 260 (6th Cir. 2009).

Further, police officers may execute a protective search of a vehicle during a traffic stop if they have reasonable suspicion that the suspect poses a danger to their

safety. *See U.S. v. Shank*, 543 F. 3d. 309, 314 (6th Cir. 2008). A search may occur if "the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and . . . may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The scope of the search is limited to "those areas in which a weapon may be placed or hidden." *Id*.

In the present case, both Officer Reyes-Morales and Officer Lockhart claim that they personally observed Defendant Reed throwing what appeared to be a firearm towards his back seat. Officer Reyes-Morales also stated in both his report and testimony that he heard the gun make contact with the floorboard and the rear right passenger door. If the officers reasonably believed their observations were true—even if they did not immediately communicate that observation—it is plausible that they feared for their safety. If a firearm was placed in the backseat of the vehicle, it is possible the Defendant could have regained possession of it. Even if the firearm was located in a pouch hanging over the front passenger seat, as Defendant claims, any item attached to a passenger seat would logically remain within the driver's reach.

In *Michigan v. Long*, the Supreme Court extended *Terry* to automobiles and found that a protective search of a vehicle's passenger compartment was warranted

7

after an officer discovered a hunting knife on the driver's side floorboard during a traffic stop. *Michigan v. Long*, 463 U.S. at 1036 (describing the driver operating his vehicle erratically, exiting the vehicle, briefly engaging with the officers, and then suddenly walking back towards his driver's side door); *Terry*, 392 U.S. at 21. Here, the police officers had similar if not stronger indications that their safety may be at risk. As in *Michigan v. Long*, Officer Reyes-Morales shined his flashlight on a weapon within reach of the driver that could immediately cause harm. The officers' search was limited in scope and reasonable under a totality of the circumstances. Therefore, the officers' visual and auditory observations, coupled with the evening's late hour, gave rise to reasonable suspicion in this case. Accordingly, the Court finds that the firearm was properly seized because reasonable suspicion existed to permit a protective search of the vehicle.

## V. Conclusion

For the reasons discussed herein, the Court will DENY Defendant's Motion to Suppress [#25].

**IT IS SO ORDERED.**

s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: March 13, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 13, 2020, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager